IDOC HOLDINGS, INC.,
*d/b/a CheckedUp*,

    Plaintiff,

v.

MARK GOETHALS,

    Defendant.
_____/

### ORDER ON MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT, AND OR, IN THE ALTERNATIVE, TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

**THIS CAUSE** is before the Court upon Defendant Mark Goethals' ("Defendant") Motion to Compel Arbitration and Dismiss the Complaint, and or, in the Alternative, to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and Incorporated Memorandum of Law, ECF No. [16] ("Motion"), filed on May 25, 2021. Plaintiff iDoc Holdings, Inc. ("Plaintiff") filed a Response in Opposition to the Motion, ECF No. [29] ("Response"), to which Defendant filed a Reply, ECF No. [40] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting materials, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part.

### I.    BACKGROUND

Plaintiff initiated this action on April 21, 2021, arising from Defendant's purported breach of his employment agreement with Plaintiff. *See generally* ECF No. [1] ("Complaint"). According to the Complaint, Defendant began his employment with Plaintiff on October 26, 2017, and executed an At-Will Employment, Confidential Information, Invention Assignment and

Arbitration Agreement ("Agreement"). *Id.* ¶¶ 25, 46; *see also* ECF No. [1-1]. Specifically, the Agreement contains non-compete, non-solicitation, and non-disclosure covenants. ECF No. [1-1]. The Complaint alleges that Defendant was one of the founding employees for Plaintiff's movement into point of care advertising and, at the time of his resignation, Defendant served as the Senior Vice President of Marketing. ECF No. [1] ¶¶ 25-28. Thereafter, Defendant began working for InStep Health, a competitor in the point of care advertising industry, as Vice President of Marketing. *Id.* ¶¶ 61-63. According to the Complaint, Defendant is violating the restrictive covenants in the Agreement, and is otherwise misusing Plaintiff's trade secrets and protected information. *Id.* ¶¶ 71-73. As a result, the Complaint asserts five counts against Defendant for Breach of the Agreement, Injunctive Relief (Count I); Breach of the Agreement, Legal Relief (Count II); Computer Fraud and Abuse Act (Count III); Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Count IV); and Misappropriation of Trade Secrets, Fla. Stat. § 688.001 (Count V).

In the Motion, Defendant seeks dismissal of Plaintiff's claims on the basis that they are subject to binding arbitration. Alternatively, Defendant argues that dismissal is nonetheless warranted for lack of subject matter jurisdiction and for failure to state a claim under 12(b)(6).

## II. LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-

me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

A court, in considering a Rule 12(b)(6) motion, "may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002))).

### III. DISCUSSION

Defendant first argues that all of Plaintiff's claims fall within the scope of the arbitration provision set forth in the parties' Agreement and are therefore subject to binding arbitration. ECF No. [16] at 7-10. Specifically, the arbitration provision states, in pertinent part:

> A. **Arbitration**. In consideration of my employment with the company, . . . I agree that any and all controversies, claims, or disputes with anyone (including the company and any employee, officer, director, shareholder or benefit plan of the company, in their capacity as such or otherwise), arising out of, relating to, or resulting from my employment with the company or the termination of my employment with the company, including any breach of this agreement, *shall be subject to binding arbitration* under the arbitration provisions set forth in the Florida Civil Practice Law And Rules, (the "Rules") and pursuant to Florida law. . . . I further understand that this agreement to arbitrate also applies to any disputes that the company may have with me.

ECF No. [1-1] at § 12(A) (capitalization altered) (emphasis added). In its Response, Plaintiff does not challenge the scope or enforceability of the arbitration provision, and "acknowledges [Defendant's] right" to arbitrate the claims for damages brought against him in Counts II through V. ECF No. [29] at 4. However, Plaintiff maintains that Counts I and a portion of Count V, which seek injunctive relief arising from Defendant's purported breach and misappropriation of trade secrets, are exempt from arbitration pursuant to Section 12(D) of the Agreement. *Id.* at 4-5. Specifically, Section 12(D) of the Agreement provides as follows:

> D. **Availability of Injunctive Relief**. I agree that any party *may also petition the court for injunctive relief* where either party alleges or claims a violation of the At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement between me and the company or any other agreement regarding trade secrets, confidential information, noncompetition or nonsolicitation. I understand that any breach or threatened breach of such an agreement will cause irreparable injury and that money damages will not provide an adequate remedy therefor and both parties hereby consent to the issuance of an injunction. In the event either party seeks injunctive relief, the prevailing party shall be entitled to recover reasonable costs and attorneys' fees.

*See* ECF No. [1-1] at § 12(D) (capitalization altered) (emphasis added).

The presence of a valid arbitration provision raises a strong presumption of enforcement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630-31 (1985) (stressing that the enforcement of a mutually agreed upon arbitration or forum-selection serves as an "indispensable precondition to the achievement of the orderliness and predictability essential to any international business transaction"). Indeed, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* "embodies a 'liberal federal policy favoring arbitration agreements.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments*, 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1357-58 (11th Cir. 2002) *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Employers*, 134 S. Ct. 773 (2014) (quoting *Mitsubishi Motors*, 473 U.S. at 625-26); *Hemispherx*, 553 F.3d at 1366 ("The role of the courts is to rigorously enforce agreements to arbitrate.") (internal citation and quotation omitted). Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. However, despite the courts' proclivity for enforcement, a party will not be required to arbitrate where the party has not agreed to do so. *See Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

The crux of Plaintiff's argument is that all claims seeking injunctive relief should proceed in this Court, while other related and/or identical claims seeking legal relief should be resolved in arbitration. ECF No. [29] at 4. The Court is not persuaded. As an initial matter, the Court must

highlight that adopting this approach would not only waste the parties' and the Court's resources but would lead to the illogical result of having two separate proceedings moving forward on the same claims at the same time. *Compare* ECF No. [1] ¶¶ 74-83, Count I for Breach of the Agreement (injunctive relief), *with id.* ¶¶ 84-88, Count II for Breach of the Agreement (legal relief); *see also id.* ¶¶ 114-125 Count V for Misappropriation of Trade Secretes (legal and equitable relief).

Moreover, two key points follow from a plain reading of the Agreement. First, while Section 12(D) permits either party to petition the Court for injunctive relief, the Agreement mandates that all claims arising out of or related to the Agreement "*shall* be subject to binding arbitration." ECF No. [1-1] at §§ 12(A), (D) (emphasis added); *see also* § 12(C) ("[N]either I nor the Company will be permitted to pursue Court action regarding claims that are subject to arbitration.") (capitalization altered). Thus, based on the foregoing language, the Court cannot permit Plaintiff to proceed in this forum on claims that are unequivocally subject to binding arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) ("By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original).

Second, contrary to Plaintiff's contention, Section 12(D) does not carve out an *exception* for claims seeking injunctive relief from the mandatory arbitration provision, but rather *supplements* it. Indeed, as stated above, there is nothing in the Agreement to suggest that Plaintiff's claims may be litigated outside of binding arbitration, or that an arbitrator could not grant the relief requested. Thus, viewing the Agreement and its provisions as a whole, the more reasonable and logical interpretation of 12(D) is that it permits either party to petition the Court for injunctive

relief once there has been a determination by an arbitrator that there has been a "breach or threatened breach" of the Agreement, ECF No. [1-1] § 12(D). *See IMS Internet Media Servs., Inc. v. Hwei Chyun Lau*, No. 17-21299-CIV, 2017 WL 11220358, at *8 (S.D. Fla. June 29, 2017),[1] *report and recommendation adopted*, No. 17-21299-CV, 2017 WL 11220359 (S.D. Fla. Dec. 21, 2017) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." (quoting Restatement (Second) of Contracts § 203(a) (1981))); *see also Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1353 (11th Cir. 2014) ("When interpreting an arbitration agreement, "due regard must be given to the federal policy favoring arbitration, and ambiguities to the scope of the arbitration clause itself resolved in favor of arbitration." (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 475-76 (1989))).

Having determined that arbitration is required, the Court now turns to whether the case should be dismissed or stayed. Although "courts in this district have taken both approaches," *Treto v. Princess Cruise Lines, Ltd.*, 2017 WL 7732870, at *5 (S.D. Fla. 2017), this Court has previously stayed proceedings rather than dismissed the action after having granted a motion to compel arbitration. *See VVG Real Estate Invs. v. Underwriters at Lloyd's, London*, 317 F. Supp. 3d 1199, 1207 (S.D. Fla. 2018) ("Although Defendant moves to dismiss and, in the alternative, stay this action, '[t]he Eleventh Circuit has held that the proper course is to stay the proceedings rather than dismiss the action.'" (quoting *Norfolk S. Ry. Co. v. Fla. E. Coast Ry., LLC*, No. 3:13-CV-576-J-

---

[1] Plaintiff's reliance on *IMS* is misplaced, as the arbitration agreement there expressly provided that either party could move for pendente lite relief "*prior to* the appointment" of an arbitrator. *IMS Internet Media Servs., Inc.*, 2017 WL 11220358, at *8. The agreement here contains no such language.

34JRK, 2014 WL 757942, at *11 (M.D. Fla. Feb. 26, 2014); *Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 699 (11th Cir. 1992))). Accordingly, this Court will stay the proceedings.[2]

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion, **ECF No. [16]**, is **GRANTED IN PART**. The Motion is granted to the extent that:

    a. Plaintiff shall submit all Counts (I, II, III, IV and V) to arbitration.

    b. This case is **STAYED** pending the completion of the arbitration proceedings.

    c. Upon completion of arbitration, the parties shall **FILE** a notice with the Court advising whether the case shall be reopened or dismissed.

    d. If Plaintiff is successful in arbitration and the arbitrator does not issue an injunction, Plaintiff may move to reopen the case and petition the Court for the issuance of an injunction consistent with Plaintiff's Motion for Preliminary Injunction, ECF No. [15].

2. To the extent not otherwise disposed of, all pending motions are denied as **MOOT** and all deadlines are **TERMINATED**.

3. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 9, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

---

[2] Because the Court has determined that this case should be stayed pending arbitration, the Court does not address the remaining arguments in the Motion.

Copies to:

Counsel of Record